JANET M. HEROLD
Regional Solicitor
BRUCE L. BROWN
Associate Regional Solicitor
ABIGAIL G. DAQUIZ
Sr. Trial Attorney (WSBA #35521)
Office of the Solicitor
United States Department of Labor
300 Fifth Avenue, Suite 1120
Seattle, WA 98104
Telephone: (206) 757-6753
Facsimile: (206) 757-6761
daquiz.abigail@dol.gov
Attorneys for the Plaintiff
Secretary of Labor

HON. JAMES L. ROBART

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON

**R. ALEXANDER ACOSTA**, Secretary of Labor, United States Department of Labor,

        Plaintiff,

v.

**HOA SALON ROOSEVELT, INC.**, a Washington corporation, **HOA SALON BALLARD, INC.**, a Washington corporation, **THUY MICHELLE NGUYEN PRAVITZ**, an individual and managing agent of the Corporate Defendants, **ERIC PRAVITZ**, an individual and managing agent of the Corporate Defendants,

        Defendants.

Case No.: 2:17-CV-00961-JLR

**PLAINTIFF'S MOTIONS *IN LIMINE***

**ORAL ARGUMENT REQUESTED**

PLAINTIFF'S MOTIONS *IN LIMINE*
PAGE - 1

U.S. Department of Labor, Office of the Solicitor
300 Fifth Avenue, Suite 1120, Seattle, WA 98104
(phone) 206-757-6762
(facsimile) 206-757-6761

This case is about Defendants' violations of the Fair Labor Standards Act ("FLSA"), which include failing to pay their workers for all hours worked and failing to keep and maintain accurate records. To promote efficiency in the presentation of evidence to the jury, Plaintiff Secretary of Labor submits the following motions *in limine* for the Court's consideration. Pursuant to Local Rule 7(d)(4), the undersigned counsel certifies that the she has conferred with Defendants through their attorneys and the parties held a telephonic conference on Friday, Dec. 21, 2018 to attempt to resolve evidentiary issues and discuss the motions anticipated by the Secretary. The parties were able to come to agreement on the issue of immigration status and the Defendants' represented that they would not elicit testimony or offer evidence about the immigration status of any of the witnesses.[1]

"Motions *in limine* are designed to avoid the delay . . . caused by objections and offers of proof at trial." Wilson v. Williams, 182 F.3d 562, 566 (7th Cir. 1999). Such motions are "useful tools to resolve issues which would otherwise 'clutter up' the trial." Palmerin v. City of Riverside, 794 F.2d 1409, 1413 (9th Cir. 1986). Motions in limine are appropriate to exclude inadmissible or prejudicial evidence. Oyarzo v. Tuolumne Fire Dist., 2013 WL 5718882 (E.D. Cal., 2013). Whether to grant a motion *in limine* is left to the sound discretion of the district court. United States v. Ravel, 930 F.2d 721, 726 (9th Cir.1991).

The Secretary of Labor respectfully requests that the Court grant the following motions:

//

---

[1] The immigration status of the non-party employees for whom the Secretary seeks back wages is irrelevant to any defense to allegations that the Defendants violated the overtime pay, minimum wage, or record keeping requirements of the FLSA. In re Reyes, 814 F.2d 168, 170 (5th Cir. 1987); Montoya v. S.C.C.P. Painting Contractors, Inc., 530 F. Supp. 2d 746, 748-49 (D. Md. 2008); Zeng Liu v. Donna Karan Intern., Inc., 207 F.Supp.2d 191, 192 (S.D.N.Y., 2002).

**1. The Court should prohibit Defendants from presenting evidence or argument concerning the Secretary's underlying investigation, including investigative process and methods, internal deliberations, or decision to investigate Defendants.**

The Court should exclude any evidence or argument concerning the Secretary's investigative process and methods, internal deliberations, or decision to investigate Defendants.[2] Fed. R. Evid. 401 and 402. Such topics are irrelevant to whether Defendants violated the FLSA.[3]

---

[2] Because the Secretary intends to rely upon them at trial, the identities of and information provided by the Secretary's informer witnesses are relevant and thus have been disclosed. *See* Fed. R. Civ. P. 26(a)(3)(A)(i), (iii).

[3] Even if the investigation were relevant, various privileges shield the Secretary's investigation from inquiry—protecting the identity of complainants as government informants, protecting communications between the agency and its informants, and protecting internal deliberations. First, the Ninth Circuit in In re Perez held that disclosing the identities of all non-testifying Department informers was unnecessary where the Department had already disclosed the identities and statements of each testifying employee and where the Defendant company had access to the remaining affected employees' records. In re Perez, 749 F.3d 849, 856-59 (9th Cir. 2014)).

Second, communications between representatives of the Secretary and workers who have a common legal interest are protected by the common interest privilege, an extension of the attorney client privilege. Sec'y of Labor v. Kazu Construction, LLC, 2017 WL 628455, *8 (U.S.D.C. Hawaii, March 28, 2018). The attorney-client privilege protects communications made by a client in confidence to his attorney and serves to promote full and frank communication between attorneys and their clients. Upjohn Co. v. United States, 449 U.S. 383, 388 (1981). The Ninth Circuit has explicitly recognized that communications between parties with a common legal interest for the purpose of furthering that interest may be subject to the attorney-client privilege. United States v. Gonzalez, 669 F.3d 974, 978 (9th Cir. 2012).

Finally, the deliberative process privilege protects "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions . . . are formulated." FTC v. Warner Commc'ns, Inc., 742 F.2d 1156, 1161 (9th Cir. 1984). The purpose of the privilege is to shield intra-agency communications from disclosure "to allow agencies freely to explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny." Assem. of State of Cal. v. U.S. Dep't of Commerce, 968 F.2d 916, 920 (9th Cir. 1992).

In the course of discovery Defendants have not attempted to override these privileges and there may not be any controversy over the protections discussed above. They are included here to preserve the objection in the event that Defendants intend to elicit testimony protected by these privileges. Defendants' witness and exhibit lists are due to be shared with the Secretary on Jan. 2, 2019 pursuant to Local Rule 16.

PLAINTIFF'S MOTIONS *IN LIMINE*
PAGE - 3

U.S. Department of Labor, Office of the Solicitor
300 Fifth Avenue, Suite 1120, Seattle, WA 98104
(phone) 206-757-6762
(facsimile) 206-757-6761

Defendants' effort to divert attention from their own conduct to the Secretary's investigation is a common defense tactic. However, how the Secretary conducted his investigation and any decision related to that investigation is wholly irrelevant to whether Defendants violated the FLSA. Defendants' failure to pay their workers in compliance with the FLSA and their subsequent retaliation—not the Secretary's investigation—is what is on trial.

Numerous courts have considered and rejected defendants' attempts to deflect attention and waste time litigating over the sufficiency and quality of a government agencies' civil investigative process. In Red Ball Interior, the employer defending against FLSA violations sought discovery to attack "the quality of the [Secretary's] investigation." Donovan v. Red Ball Interior Demolition Corp., 1982 WL 2052, at *1 (S.D.N.Y. Sept. 21, 1982). The district court rejected the employer's effort to explore the details and merits of the Secretary's investigation, explaining

> [T]he thoroughness and quality of the plaintiff's investigation will not be an issue at trial. The issues at trial with respect to whether violations of the Fair Labor Standards Act occurred will depend on the evidence adduced at trial, not on the evidence uncovered or not uncovered during the course of the investigation.

Id. As a circuit court reasoned, permitting a defendant to challenge an agency's civil investigation "'would deflect the efforts of both the court and the parties from the main purpose of th[e] litigation: to determine whether [the defendant] has actually violated' the law." Keco Indus., 748 F.2d at 1100 (quoting EEOC v. Chi. Miniature Lamp Works, 526 F. Supp. 974, 975 (N.D. Ill. 1981)). As a result, inquiry into the government's civil investigation leading up to the government's lawsuit "is inappropriate satellite litigation." United States v. Lake Cnty. Bd. of Com'rs, 2006 WL 1660598, at *2 (N.D. Ind. June 7, 2006); see also Madden v. Int'l Hod Carriers', Bldg. & Common Laborers' Union of Am., 277 F.2d 688, 693 (7th Cir. 1960) ("[T]he scope, conduct or extent of the preliminary investigation

PLAINTIFF'S MOTIONS *IN LIMINE*
PAGE - 4

U.S. Department of Labor, Office of the Solicitor
300 Fifth Avenue, Suite 1120, Seattle, WA 98104
(phone) 206-757-6762
(facsimile) 206-757-6761

are not matters relevant to or material for consideration on the issue to be adjudicated on hearing of . . . whether reasonable cause exists to believe a violation has occurred.");[4] EEOC v. Gold River Operating Corp., 2007 WL 983853, at *3 (D. Nev. March 30, 2007) (courts "are in agreement that an employer may not litigate the adequacy of the EEOC's investigation or determination") (citing cases).

Thus—*for decades*—courts in a variety of contexts have trained their focus on defendants' conduct, resisting defendants' efforts to put the underlying civil government investigative process on trial. This is because, as those courts have explained, the proper protection of defendants' rights is holding the government to its burden to prove its claims at trial, which will be the case here.[5] Most recently, this issue was addressed when a court struck a defendant's affirmative defense that the underlying investigation by the Department of Housing and Urban Development ("HUD") violated its due process rights. United States v. East River Housing Corp., 90 F. Supp. 3d 118, 133-37 (S.D.N.Y. 2015); see also Hibbing, 266 F.R.D. at 273 (rejecting "affirmative defense of a tainted investigation and reasonable cause finding"). There, a defendant asserted a complete bar to the case, alleging deficiencies related to HUD's investigation. E. River, 90 F. Supp. 3d at 133. In rejecting that affirmative defense, the court explained that the "the alleged deficiencies in HUD's investigative process have no bearing on the legitimacy of this civil action commenced by the Department of

---

[4] See also D'Amico v. Cox Creek Refining Co., 126 F.R.D. 501, 505-06 (D. Md. 1989) (same); United States v. Electro-Voice, Inc., 879 F. Supp. 919, 923-24 (N.D. Ind. 1995) ("[I]nformation about the adequacy of the Regional Office's investigation of the case or the Agency's review of the evidence . . . is not relevant.").

[5] *See, e.g.*, Keco, 748 F.2d at 1100 ("If the charge is not meritorious, procedures are available to secure relief, i.e. a de novo trial in the district court."); Madden, 277 F.2d at 693 ("[T]he adequacy of the investigation is judicially tested only by the Board's subsequent ability to sustain its initial determination that the investigation disclosed reasonable cause to believe that a violation occurred"); EEOC v. Hibbing Taconite Co., 266 F.R.D. 260, 273 (D. Minn. 2009) (whether EEOC brought claim properly "is an issue for the Trial, when the EEOC must prove to a fact-finder that the discrimination alleged in fact occurred").

U.S. Department of Labor, Office of the Solicitor
300 Fifth Avenue, Suite 1120, Seattle, WA 98104
(phone) 206-757-6762
(facsimile) 206-757-6761

Justice." Id. at 134 (citing Lake Cnty., 2006 WL 1660598, at *2). Rather, the court explained, "[i]t would be irrational to treat [those deficiencies] as complete defenses to a civil action in which a factfinder will duly consider the merits of the Government's claims." Id. at 134.

From a practical perspective, these principles all make sense—particularly in the context of employment litigation—as workers who boldly come forward to complain to the Secretary about their employers should not have to worry about the conduct of an investigation they had no control over. See E. River, 90 F. Supp. 3d at 135); see also EEOC v. Recruit USA, Inc., 939 F.2d 746, 753 (9th Cir.1991). Once litigation has been initiated, whether workers' complaints have merit will rise or fall on the evidence the Secretary presents at trial. Why the Secretary chose to investigate Defendants and how well the Secretary conducted his investigation does not bear—one way or the other—on whether Defendants violated the FLSA or whether Defendants have a defense to any such violations. Put simply, even if Defendants had cause to argue that the Secretary conducted a flawed investigation, that argument provides no excuse for Defendants violating the FLSA by failing to pay their employees the wages they are due.

**2. The Court should prohibit Defendant from referring to the Secretary's on-site visits to Defendants' establishments as "raids."**

In the course of discovery, Defendants referred to the Department of Labor's on-site visits to the Defendants' establishments as "raids." The Defendants should be prohibited from referring to these on-site visits as "raids" because the investigation is irrelevant, the use of such terminology is prejudicial and misleading, and would be a waste of time. Fed. R. Evid. 401, 402, 403, and 611.

As argued above, it is the Defendants' failures to act in accordance with the FLSA, and not the Department's investigation that is at issue. Evidence must

PLAINTIFF'S MOTIONS *IN LIMINE*
PAGE - 6

U.S. Department of Labor, Office of the Solicitor
300 Fifth Avenue, Suite 1120, Seattle, WA 98104
(phone) 206-757-6762
(facsimile) 206-757-6761

be relevant to a claim or defense in this case—evidence is relevant only if it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Evidence that is not relevant to a fact that is of consequence to the trial is inadmissible. Fed. R. Evid. 402; see also Estate of Gonzales v. Hickman, et al., 2007 WL 3237635, at *8-9 (C.D. Cal. June 28, 2007) (finding proposed testimony irrelevant to party's claim and accordingly inadmissible as irrelevant under Rule 401 and 402). As discussed above, the Department's investigation is not relevant.

Next, calling these on-site visits "raids" only serves to prejudice the jury against the Secretary. Even if minimally relevant, testimony may be excluded if its probative value is substantially outweighed by the risk of unfair prejudice, confusion of the issues, or misleading the jury. Fed. R. Evid. 403. The Department of Labor's investigation included visits to Defendants' business located in the Roosevelt neighborhood, and the site of Hoa Salon Ballard in the Ballard neighborhood. These visits included requesting a meeting with the managers and owners, asking for opportunities to meet with employees, and surveying the worksite. The Department's investigators are not armed and they regularly meet with employers and employees at their place of work during unannounced visits. Defendants' use of the term "raid" implies force and surprise, evoking scenes of police "raids" during criminal investigations as depicted in television shows and movies—and is not descriptive of what occurred during the investigation of the Defendants' businesses.

Finally, the Court "should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to . . . avoid wasting time." Fed. R. Evid. 611(a)(2). Testimony about the Department's "raids" would only tend to waste the court's and the jury's time. If Defendants characterize the

U.S. Department of Labor, Office of the Solicitor
300 Fifth Avenue, Suite 1120, Seattle, WA 98104
(phone) 206-757-6762
(facsimile) 206-757-6761

Department's routine investigation and site visits as "raids" it would necessitate the Secretary calling or recalling witnesses to correctly describe the course of events during the investigation, including how the department conducted those on-site visits. Defendants' use of the term "raid" when referring to routine investigations to determine compliance with the Fair Labor Standards Act is prejudicial and would waste the court and the jury's time. Therefore, the Court should prohibit Defendants from referring to these visits as "raids" in their questioning and when individual Defendants are testifying.

**3. The Court should prohibit Defendants from presenting evidence not produced in the course of discovery.**

Federal Rule of Civil Procedure 37 provides, in relevant part, that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." A party's "failure to provide such information during discovery renders any such effort to do so at trial subject to the exclusionary sanctions of Rule 37." Markos v. Sears, Roebuck and Co., No. CV 05-3051 CBM (JWJx), 2007 WL 5162457, at *3 (C.D. Cal. Mar. 19, 2007) citing Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001) (holding that "exclusion is an appropriate remedy for failing to fulfill the required disclosure requirements of Rule 26(a)" even absent a showing of bad faith or willfulness on part of sanctioned litigant)); see also Hoffman v. Constr. Protective Services, Inc., 541 F.3d 1175, 1180 (9th Cir. 2008) ("Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." (quoting Yeti, 259 F.3d at 1106).

"The Rule 37 sanction of exclusion for failure to comply with Rule 26 is

PLAINTIFF'S MOTIONS *IN LIMINE*
PAGE - 8

U.S. Department of Labor, Office of the Solicitor
300 Fifth Avenue, Suite 1120, Seattle, WA 98104
(phone) 206-757-6762
(facsimile) 206-757-6761

mandatory, 'unless such failure is harmless.'" Markos, 2007 WL 5162457, at *3 (quoting Fed. R. Civ. P. 37(c)(1)). "It is the duty of the party seeking admission of the evidence to establish the harmlessness of the failure to produce." Id.; see also Von Brimer v. Whirlpool Corp., 536 F.2d 838, 843 (9th Cir. 1976) (holding, *inter alia*, that district court properly excluded certain documents which plaintiffs had not produced until the eve of trial); Zhang v. Am. Gem Seafoods, Inc., 339 F.3d 1020, 1028 (9th Cir. 2003) (holding, *inter alia*, that district court did not abuse its discretion in excluding document from trial that was not produced in discovery).

As discussed below, Defendants failed to timely produce some payroll records for Hoa Salon Ballard; and point of sale records for Hoa Salon Ballard and Hoa Salon Roosevelt during discovery and now intend to use them at trial.

### a. Defendants' purported time records showing hours worked by employees of Hoa Salon Ballard for 2015, produced on December 6, 2018, should be excluded.

On April 30, 2018, Defendants responded to discovery requests directed to Hoa Salon Ballard requesting all time records showing hours worked from June 22, 2014 to the present (RFP No. 1) and all documents related to Defendants recording and compensating employees for hours worked (RFP No. 5). Declaration of Abigail Daquiz ("Daquiz Decl."), Ex. 1 (Hoa Salon Ballard narrative responses to Request for Production). Defendants produced a handful of worksheets showing a monthly summary of hours reported per day for one month in 2015 and 4 months in 2016. Daquiz Decl., ¶ 3. Defendants stated that "responsive documents in Defendant's possession have been produced." Elsewhere in their responses Defendants stated that that after the Ballard establishment's assets were sold in June 2016, "many business records were not kept." Daquiz Decl., Ex. 1, Response to RFP No. 4, at p. 7. Defendants gave no

PLAINTIFF'S MOTIONS *IN LIMINE*
PAGE - 9

U.S. Department of Labor, Office of the Solicitor
300 Fifth Avenue, Suite 1120, Seattle, WA 98104
(phone) 206-757-6762
(facsimile) 206-757-6761

indication that a further production would be coming. Then, on Dec. 6, 2018, months after the Defendant owners and managers were deposed and after the close of discovery, Defendants produced supplemental responses containing 12 months of data from 2015 for the Hoa Salon Ballard location. Daquiz Decl., Ex. 2 (Hoa Salon Ballard Supplemental Responses to Request for Production); and ¶ 5. These documents from 2015 were squarely within scope of the Secretary's first set of discovery directed to Hoa Salon Ballard, Inc. and should have been timely produced. Defendants provide no explanation why documents that were purportedly created in 2015 as part of their business of making and keeping records of hours was not produced during the course of discovery. They should be excluded as a sanction under Rule 37.

### b. Defendants' Point of Sale Records are irrelevant and, even if they were relevant, Defendants failed to produce them during discovery and they should be excluded.

In the course of discovery, the Secretary asked the Defendants Hoa Salon Ballard and Hoa Salon Roosevelt for the following:

- All documents related to Defendants' recording and compensating employees for hours worked, including overtime hours (RFP No. 5);

- All documents relating to Defendants' income and expenses (RFP No. 11); and

- All documents that Defendants may use to support their claims and/or defenses (RFP No. 14).

Daquiz Decl., Ex. 1 and Ex. 3 (Hoa Salon Roosevelt discovery responses). In responses to the Secretary's request for documents, the Defendants responded to each of these requests on April 30, 2018, after seeking extensions on the original deadline. Id. Each Defendant answered that responsive documents have

U.S. Department of Labor, Office of the Solicitor
300 Fifth Avenue, Suite 1120, Seattle, WA 98104
(phone) 206-757-6762
(facsimile) 206-757-6761

been produced. Id. Defendants Michelle Pravitz and Eric Pravitz were deposed on August 22, 2018 and August 23, 2018, respectively. Daquiz Decl., ¶ 5. Discovery closed on Oct. 15, 2018. Dkt. 17. On December 14, 2018, Defendants supplemented their production with selected hourly point of sale summaries. Daquiz Decl., ¶ 7. On December 21, 2018, counsel for Defendants further supplemented its production by producing 20 MBs of data and roughly 1,400 pages that purport to be information about sales recorded at the nail salons. Id., Ex. 5 (sample of pages from production with point-of-sale records).

Here, Defendants intend to use point of sale data to show that there were times of the day during the workday where there were very few or no sales processed, arguing that there *could have been* time for employees to take breaks. First, this data is irrelevant in that it does not tend to make a claim or defense more or less likely and should be excluded. Fed. R. Evid. 401, 402. The data is backward looking and shows at what time a sale was recorded by their cashier in their sales software. It does not show a record of when workers were working preparing for clients, nor does it show when clients arrived or how long a particular service or set of services took for any individual client. Whether or not workers were provided an uninterrupted meal break such that they would not be compensated for that break is not made more or less likely by looking at data of when sales were recorded. Workers were required to report to the salon at 9:30 AM prior to the salon opening at 10 AM, whether or not there were appointments scheduled to begin at 10 AM or not. Daquiz Decl., Ex. 4 (M. Pravitz Deposition). Further, the point of sale data would only tend to confuse the issue, mislead the jury, and waste the judge and jury's time and should be excluded. Fed. R. Evid. 403. Additionally, prolonged testimony and a presentation of point of sale data for a period of three years for two nail salons would be a waste of the court's and the jury's time. Fed. R. Evid. 403 and 611(a)(2).

Finally, Defendants only produced this data on December 14, 2018 and December 21, 2018—months after the Secretary had deposed the Defendants and two months after the close of discovery. This last-minute production is extraordinarily prejudicial to the Secretary, as the Secretary has already deposed Defendants' managers and was not able to question them about these documents at their duly noted depositions. As a result, Defendants should not be allowed to proffer data and information on the point of sale data during the trial.

**4. The Court should prohibit Defendants from presenting alternative calculations of its back wage liability.**

On Dec. 19, 2018, Defendants for the first time produced an analysis of their payroll records showing instances of where they admit their own records show that they did not calculate overtime pay correctly. Defendants calculated that they owe employees a figure that is far below what the Secretary has calculated. This Court should exclude this calculation because it is not relevant, it would create confusion, and would be a waste of time. Fed. R. Evid. 401, 402, and 403. Further, Defendants did not produce these calculations during discovery and the calculations rely upon the late produced records from Hoa Salon Ballard that referred to work performed by employees in 2015 (referred to above) and should be excluded from evidence.

First, in cases where an employer did not keep accurate records of employees' time, the Court applies the burden-shifting analysis of Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946). Under Mt. Clemens, the Secretary can "prove an FLSA violation by showing that employees performed work for which they were improperly compensated and producing some evidence to show the amount and extent of that work 'as a matter of just and reasonable inference.'" In re Perez, 749 F.3d 849, 853 (9th Cir. 2014) (quoting Mt. Clemens, 328 U.S at 687); see also McLaughlin v. Ho Fat Seto, 850 F.2d 586, 589 (9th Cir.

U.S. Department of Labor, Office of the Solicitor
300 Fifth Avenue, Suite 1120, Seattle, WA 98104
(phone) 206-757-6762
(facsimile) 206-757-6761

1988) (same). "The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the [Secretary's] evidence." In re Perez, 749 F.3d at 853 (quoting Mt. Clemens, 328 U.S. at 687–88). Defendants did not keep a record of their employees' breaks and their own records and admission will show that they failed to record all hours worked. Defendants' recalculations are not evidence of the precise amount of work performed nor do they "negative the reasonableness" of the Secretary's evidence. Therefore, they should be excluded as not relevant to the claims or defenses. Fed. R. Evid. 401, 402.

Further, any probative value of the Defendants' analysis of its payroll data is substantially outweighed by the possibility of confusing the issues, misleading the jury and wasting time. Fed. R. Evid. 403. The Secretary's case is broader than the calculation error that resulted in unpaid wages revealed by Defendants' analysis. Defendants did not maintain records of all of the hours worked and workers will testify that they regularly worked 9.5 or up to 10 hours per day, and were regularly only paid for 9 hours—and at issue is the unrecorded (and unpaid) time. Testimony about the wages the Defendants' admit they did not pay for the hours that they did record confuses the issue and could mislead the jury and should be excluded.

Finally, Defendants' analysis of the overtime it admits to owing its workers who worked at Hoa Salon Ballard in 2015 is built largely from these late-disclosed payroll records. See, supra, pp. 8-9. The calculations and some of the underlying data used to arrive at the calculations were not disclosed during discovery and should be excluded as a sanction for the untimely disclosure. Fed. R. Civ. P. 37.

U.S. Department of Labor, Office of the Solicitor
300 Fifth Avenue, Suite 1120, Seattle, WA 98104
(phone) 206-757-6762
(facsimile) 206-757-6761

**5. The Court should prohibit Defendants from inquiring about any awards of back pay that worker witnesses may have received as a result of government investigations of previous employers.**

During the depositions of worker witnesses, Defendants inquired into the witnesses' prior employment history and whether they received back pay awards stemming from a government investigation of their prior employers (another nail salon that is <u>not</u> a Defendant here). Inquiring into these prior investigations and any resulting award of back wages to these employees should be excluded because such evidence is irrelevant, it would be a waste of time and could be misleading or confusing, and it is improper character evidence.

First, Defendants cannot argue that prior investigations and awards of back pay are relevant to a claim or defense. Fed. R. Evid. 401 and 402. The employers will likely defend to say that they did in fact pay for all of the hours their employees worked; or that the employees are lying when they testify that they did not take uninterrupted breaks. Evidence of prior back wage payments does not make it more or less likely that Defendants paid for all of the hours that particular employee worked or that workers are lying about whether or not they were afforded uninterrupted breaks that was not compensable work time. To the extent that Defendants want to argue that the possibility of recovering back wages gives a witness an incentive to lie, they can do that by establishing that the employee knows that the case at bar might result in a back wage award. Whether the employees were previously deprived of wages by a different employer in an unrelated case and later recovered back wages because of a government investigation does not make any of Defendants' defenses more or less likely.

Second, even if it were marginally relevant, the Court should exclude evidence of prior back wage payments because its probative value is substantially outweighed by the danger that it will be confusing and misleading to

PLAINTIFF'S MOTIONS *IN LIMINE*
PAGE - 14

U.S. Department of Labor, Office of the Solicitor
300 Fifth Avenue, Suite 1120, Seattle, WA 98104
(phone) 206-757-6762
(facsimile) 206-757-6761

the jury and would be a waste of the Court's and the jury's time. Fed. R. Evid. 403. Evidence of these prior back wage payments has the potential to confuse the issues and mislead the jury because inherent in the employer's argument that the evidence is admissible is an argument that the employee is someone who plays the system and unfairly received those back wages.

Further, admitting evidence of the employees receiving back wages in an unrelated case would necessitate a mini-trial on the prior case and would be a waste of time. Fed. R. Evid. 403, 611(a)(2). It would open up an exploration of the allegations against that other establishment that resulted in that back wage award, whether the employer admitted to the violations or contested them, whether the employee was an active participant or simply a member of the class of workers affected and who was awarded back pay. All of this would be a waste of time.

Finally, extrinsic evidence of a witnesses' conduct is <u>only</u> admissible to attack the witnesses' character if it is "probative of the character for truthfulness or untruthfulness." Fed. R. Evid. 608(b). The fact that an employee received back wages as a result of a prior government investigation is only evidence of this type if the employer has evidence that that the employee lied during that prior investigation.

### 6. The Court should prohibit Defendants from inquiring about other complaints employees' have made about their employment.

Former employee, Chau Ong, made a complaint to the Washington State Labor and Industries that she was not paid for overtime. That complaint resulted in a finding that Hoa Salon Ballard, Inc. did not violate the Washington State wage payment law concerning Ms. Ong. Daquiz Decl., Ex. 6 (Letter from LNI). Evidence about that prior complaint should be excluded as irrelevant, a waste of

U.S. Department of Labor, Office of the Solicitor
300 Fifth Avenue, Suite 1120, Seattle, WA 98104
(phone) 206-757-6762
(facsimile) 206-757-6761

time, misleading or confusing, and it is improper character evidence. Fed. R. Evid. 401, 402, 403, and 608.

As argued above, testimony and evidence about employees' other complaints, other than whether they were compensated in accordance with the Fair Labor Standards Act, is irrelevant to whether or Defendants violated the Act. The only way that this prior complaint would have been relevant is if the employee had received an award for unpaid overtime hours worked during the time period for this suit (requiring that the demand for backwages as to Ms. Ong be offset). However, there was no finding of a violation by the state agency and its finding creates no precedent for whether there were violations of the Fair Labor Standards Act as alleged by the Secretary here.

Further, the state's investigation is not on trial and inquiry about that investigation (what information Ms. Ong provided them, what Defendants' response was, and what else the state investigator considered) would create confusion and waste the court's and the jury's time. To the extent that there is no evidence that the witness lied to either agency, the fact of the complaint (to a different regulatory body under a different set of laws) is irrelevant and should be excluded. Fed. R. Evid. 403, 608.

**7. The Court should prohibit Defendants from presenting evidence and testimony about their civic activities or other evidence of character unrelated to their propensity to be truthful.**

Rule 404 of the Federal Rules of Evidence precludes evidence of a person's character if offered for the purpose of proving that he or she acted in accordance therewith. Likewise, testimony regarding a person's character is inadmissible if offered for the purpose of bolstering a witness's credibility. *U.S. v. Hashisaki,* 203 F.3d 833 (Table) at *2 (9th Cir. 1999), citing *United States v.*

U.S. Department of Labor, Office of the Solicitor
300 Fifth Avenue, Suite 1120, Seattle, WA 98104
(phone) 206-757-6762
(facsimile) 206-757-6761

*Candoli*, 870 F.2d 496, 506 (9th Cir.1989) (holding that testimony regarding a prior witness's excellent professional reputation was improper character evidence because it "amounted to an improper bolstering of [the prior witness's] credibility"). Rule 608's exception to Rule 404—which allows testimony regarding the credibility of a witness if the evidence refers only to a person's character for truthfulness—does not apply here.

Here, Defendants are expected to testify about their involvement with nonprofit organizations and their provision of benefits to their employees that are are above and beyond what is required of them, including promising "full-time" work, paying the workers for holidays and providing paid sick leave before they were required to provide paid sick leave as employers in Seattle, WA. None of these activities is relevant to either of the Pravitz's credibility or truthfulness. Rather, such testimony would be a blatant attempt to bolster their credibility and should not be permitted. Fed. R. Evid. 404. Rather, the issues before the Court will be whether Defendants employed the Exhibit A Employees; whether the Exhibit A Employees worked overtime; and whether Defendants failed to pay the Exhibit A Employees the half-time overtime premiums.

**CONCLUSION**

For the foregoing reasons, the Court should exclude the evidence as outlined above to most efficiently use the court's time and the honor the service of the jury called on to hear the evidence.

//
//
//
//
//
//

U.S. Department of Labor, Office of the Solicitor
300 Fifth Avenue, Suite 1120, Seattle, WA 98104
(phone) 206-757-6762
(facsimile) 206-757-6761

DATED this December 31, 2018.

KATE S. O'SCANNLAIN
Solicitor of Labor

JANET M. HEROLD
Regional Solicitor

BRUCE L. BROWN
Associate Regional Solicitor

ABIGAIL G. DAQUIZ
Senior Trial Attorney
Attorneys for Plaintiff
United States Department of Labor

PLAINTIFF'S MOTIONS *IN LIMINE*
PAGE - 18

U.S. Department of Labor, Office of the Solicitor
300 Fifth Avenue, Suite 1120, Seattle, WA 98104
(phone) 206-757-6762
(facsimile) 206-757-6761