UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

R. ALEXANDER ACOSTA,

                Plaintiff,

    v.

HOA SALON ROOSEVELT, INC.,
et al.,

                Defendants.

CASE NO. C17-0961JLR

ORDER DENYING
DEFENDANTS' MOTION FOR
PARTIAL SUMMARY
JUDGMENT

## I. INTRODUCTION

Before the court is Defendants Hoa Salon Roosevelt, Inc., Hoa Salon Ballard, Inc., Thuy Michelle Nguyen Pravitz, and Eric Pravitz's (collectively, "Defendants") motion for partial summary judgment. (*See* Mot. (Dkt. # 30).) Defendants argue that Plaintiff R. Alexander Acosta, Secretary of Labor ("the Secretary"), cannot meet his burden of demonstrating that Defendants' alleged Fair Labor Standards Act ("FLSA") violations were willful thereby justifying the imposition of a three-year statute of limitations for

willful FLSA violations rather than the presumptive two-year limitations period. (*See id.*); *see also* 29 U.S.C. § 255(a). The Secretary opposes Defendants' motion. (*See* Resp. (Dkt. # 34).) The court has considered the motion, the parties' submission in support of and opposition to the motion, the relevant portions of the record, and the applicable law. In addition, the court heard counsel's oral argument on January 23, 2018. Being fully advised, the court DENIES Defendants' motion.

## II.     BACKGROUND

**A.          Factual Background**

Ms. Pravitz owns Hoa Salon Roosevelt and Hoa Salon Ballard. (*See* Am. Compl. (Dkt. # 15) ¶ 6; Answer (Dkt. # 20) ¶ 5 (admitting these allegations).) Mr. Pravitz directs and oversees the operations, pay practices and payroll, terms of employment, and the supervisors and managers at both salons. (*See id.*)

Mr. Pravitz testifies that when he and Ms. Pravitz opened their first nail salon, Hoa Salon Roosevelt, they were trying to change the practices they saw in other nail salons where employees were accustomed to irregular payment methods with a mix of payroll checks and cash. (Daquiz Decl. (Dkt. # 35) ¶ 3, Ex. 4 ("E. Pravitz Dep.") at 17:11-16.) Mr. Pravitz testifies that he and Ms. Pravitz were trying to set up "a normalized employment system" to ensure that employees were paying towards Social Security and payroll taxes. (*Id.* at 17:14-20.) Indeed, as a part of this process, Mr. Pravitz drafted employment letters for Hoa Salon employees, which outlined the terms of employment, including the employee's hourly pay rate, the overtime rate at 1.5 times the hourly rate, the employee's duties, and information concerning schedules and breaks. (Daquiz Decl.

¶ 5, Ex. 4 (attaching employment letters produced by Defendants); E. Pravtiz Dep. at 31:1-18.)  Mr. Pravitz testifies that he knew about the minimum wage and the "sick time ordinance that was passed" because this information "was widely available through media."  (E. Pravitz Dep. at 58:2-10.)  However, he also notes that Defendants had been paying employees for their sick time prior to the enactment of new ordinance.  (*See id.*)

In 2013, the United States Department of Labor ("DOL") investigated Hoa Salon Roosevelt "as part of an emphasis program focusing on nail salons in the Seattle area." (Chan Decl. (Dkt. # 36) ¶ 2.)  Mr. Pravitz understood that DOL's investigation of Hoa Salon Roosevelt was "random" and was intended to determine if "Hoa [Salon] Roosevelt was properly compensating its employees for their hours worked."  (E. Pravtiz Decl. (Dkt. # 31) ¶¶ 3-4.)  Mr. Pravitz testifies that he and Ms. Pravitz cooperated with DOL's investigator to their "fullest extent."  (*Id.* ¶ 3.)  Mr. Pravitz recalls that the DOL investigator requested, and Defendants provided to her, the Hoa Salon Roosevelt employee work schedules and payroll records for a specified period of time.  (*Id.* ¶ 4.) Mr. Pravitz also recalls that the DOL investigator interviewed some of Hoa Salon Roosevelt's employees.  (*Id.*)

Mr. Pravitz and Ms. Pravtiz met with the DOL investigator to discuss the result of the 2013 investigation.  (*Id.* ¶ 5.)  Mr. Pravitz testifies that the DOL investigator stated that the investigation "had not revealed any wage violations."  (*Id.*)  However, Mr. Pravitz also recalls that the investigator suggested one change—that Hoa Salon Roosevelt change its internal payroll records from classifying all employees as "salaried," and

instead classify those employees who were paid by the hour and for overtime as "hourly."
(*Id.*)

Ultimately, Mr. Pravitz and Ms. Pravtiz made this suggested change, but not until April 1, 2015. (*See id.*; Daquiz Decl. ¶ 6, Ex. 5 ("Roosevelt Disc. Resp.") at 3, *Id.* ¶ 7, Ex. 6 ("Ballard Disc. Resp.") at 3.) On April 1, 2015, Defendants switched the payroll systems at both Hoa Salon Roosevelt and Hoa Salon Ballard "to reflect hourly pay rather than an annual salary." (Roosevelt Disc. Resp. at 3; Ballard Disc. Resp. at 3.) Prior to this change, Hoa Salon employees were paid twice a month on the 5th and 20th of each month. (*Id.*) Mr. Pravitz explained that he initially used a "salary" payroll system because that was the type of system with which he was familiar, and he used his own experience as his model. (E. Pravitz Dep. at 17:3-20.) Nevertheless, Defendants' initial payroll system calculated overtime hours that employees worked in excess of 87 hours for each bi-monthly payroll period at 1.5 times the base hourly rate. (Roosevelt Disc. Resp. at 3; Ballard Disc. Resp. at 3.) Defendants entered employees' overtime hours into the payroll system under the category "Bonus." (*Id.*) Thus, although Defendants initially categorized employees as "salary," the payroll system nevertheless accounted for overtime payments.[1] (*See id.*)

Based on the testimony of DOL's former investigator, Sherrie Chan, the Secretary's description of DOL's 2013 investigation of Hoa Salon Roosevelt differs in

---

[1] In addition, Defendants calculated (1) holiday pay at 8 hours of employees' regular pay rate and entered this pay under the category "Holiday," and (2) sick pay at the employees' regular pay rate and entered this pay under the category "Sick." (*See* Roosevelt Disc. Resp. at 3; Ballard Disc. Resp. at 3.)

certain ways from Defendants' recollection. (*Compare* Chan Decl., *with* E. Pravtiz Decl.) For example, although Mr. Pravitz recalls "that the investigation had not revealed any wage violations" (E. Pravtiz Decl. ¶ 5), Ms. Chan testifies that she "found some instances where employees were not paid overtime," although Defendants then paid these amounts "immediately" (Chan Decl. ¶ 5). In addition, Ms. Chan recalls that Mr. Pravitz and Ms. Pravitz did not maintain employees' time records showing the start and end of each employee's shift, and she informed them that they needed to maintain these types of records for two years. (*Id.* ¶¶ 4, 6.) Finally, Ms. Chan testifies that she provided Mr. Pravitz and Ms. Pravitz with a variety of FLSA "guidance documents in the form of booklets and pamphlets." (*Id.* ¶ 7, Exs. A-K.) Mr. Pravtiz makes no mention of receiving any of these documents.[2] (*See generally* E. Pravtiz Decl.)

On June 1, 2016, Defendants made an additional change to their payroll system. (Roosevelt Disc. Resp. at 3; Ballard Disc. Resp. at 3.) They added an "Overtime" category so that they no longer recorded overtime pay in the "Bonus" category. (*Id.*) Mr. Pravtiz explained that he had wanted to make this change when Defendants changed from a "salary" to an "hourly" payroll system, but he had difficulty initially getting his accountant to make this change. (E. Pravtiz Dep. at 54:6-17.) Ultimately, he obtained the ability to make this change in the payroll system himself, and so he did. (*See id.*)

---

[2] Like Mr. Pravtiz, Ms. Chan recalls discussing how Defendants should change their payroll records "to reflect wages earned by their employees for hourly work instead of as salaried employees to help . . . [ensure] that overtime was accounted for properly." (Chan Decl. ¶ 6; *see also* E. Pravtiz Decl. ¶ 5.) As noted above, Defendants made this change on April 1, 2015. (*See* E. Pravtiz Decl. ¶ 5; Roosevelt Disc. Resp. at 3; Ballard Disc. Resp. at 3.)

In October 2016, DOL initiated another investigation of Defendants' payroll practices at three related salons—Hoa Salon Roosevelt, Hoa Salon Ballard, and Hoa Salon Madison.[1] (*See* E. Pravtiz Decl. ¶ 6; Walum Decl. (Dkt. # 37) ¶¶ 2-3.) Mr. Pravitz testifies that he and Ms. Pravitz were confident that they would "again be found in compliance" because he understood that the 2013 investigation "had not revealed any wage violations" and with the exception of the classification change from "salary" to "hourly," they had been "following the same employee scheduling and payroll practices . . . in place at the time of the July 2013 investigation." (E. Pravitz Decl. ¶¶ 5-6.)

On October 21, 2016, DOL's investigator, Katherine Walum, met with Mr. Pravitz and Ms. Pravtiz. (Walum Decl. ¶ 2.) Ms. Walum testifies that at that initial conference, Mr. Pravitz and Ms. Pravtiz told her that their employees were required to be at work from 9:30 a.m. to 7:15 p.m. daily and that they were paid for nine hours of work with 30 minutes for lunch deducted. (*Id.*) They further described a "turn-based" system for assigning clients to employees throughout the day. (*Id.*) Ms. Walum further testifies that Mr. Pravitz and Ms. Pravtiz "readily admitted that they did not record breaks on the time sheets," but that employees could "choose to skip their turn with a client in order to take a break." (*Id.*) Ms. Walum states that Mr. Pravitz and Ms. Pravitz were unable to produce any of the time records showing the time at which employees started and ended their

//

---

[1] On November 6, 2018, the court entered a stipulated order dismissing Defendant Hoa Salon Madison, along with Defendants Huyen Nguyen, Thuy Hong, and Lam Huynh, from this suit. (11/6/18 Order (Dkt. # 28).)

shifts because they had not maintained them at either Hoa Salon Roosevelt or Hoa Salon Ballard. (*Id.* ¶ 4.) For Hoa Salon Roosevelt, they provided worksheets with a daily number of hours worked per employee. (*Id.*) For Hoa Salon Ballard, they provided payroll records of paychecks issued and worksheet records of daily hours for a few months. (*Id.*) Mr. Pravitz and Ms. Pravitz explained that they had not maintained the balance of the records because they had sold Hoa Salon Ballard. (*Id.*)

Beginning on January 1, 2017, Defendants began calculating employee hours by using seven-day periods, Sunday through Saturday, instead of their previous bi-monthly system based on 87-hour pay periods. (Roosevelt Disc. Resp. at 3; Ballard Disc. Resp. at 3.) Under the new system, any hours worked in excess of 40 hours during the seven-day pay period was calculated at 1.5 times the regular pay. (*Id.*) On April 16, 2017, Defendants changed to payday every two weeks from the previous system of twice a month. (*Id.*) The "change to a 7-day pay period (instead of a semi-monthly pay period) coupled with the use of an overtime category to reflect overtime payments allows employees and independent auditors to review pay records against records of hours worked to determine whether or not the employees were being properly compensated for overtime hours." (Walum Decl. ¶ 5.)

**B.      Procedural Background**

The Secretary filed suit against Defendants on June 22, 2017, alleging a variety of FLSA violations, and filed an amended complaint on September 26, 2017. (*See* Compl. (Dkt. # 1); Am. Compl.) The Secretary alleges that Defendants violated recordkeeping, overtime, and minimum wage provision of the FLSA. (Am. Compl. ¶¶ 15-17 (citing 29

U.S.C. §§ 206, 207, 211(c), 215(a)(2), 215(a)(5)).)  In both his original and amended complaints, the Secretary specifically alleges that Defendants violated the FLSA "willfully."  (Compl. ¶ 18; Am. Compl. ¶ 18.)  The Secretary claims Defendants owe current and former Hoa Salon Roosevelt and Hoa Salon Ballard employees at least $137,603.59 in damages over a three-year liability period for willful violations of the FLSA, plus an equal amount in liquidated damages.  (Martin Decl. (Dkt. # 32) ¶ 2, Ex. A ("Plf. Initial Discl.") at 4.)  Defendants expressly deny the Secretary's allegation that any the alleged FLSA violations were willful.  (Answer ¶ 17.)

On October 23, 2017, the Secretary produced his initial disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1)(A).  (*See* Plf. Initial Discl.); *see also* Fed. R. Civ. P. 26(a)(1)(A).  The Secretary did not disclose Ms. Chan, DOL's 2013 investigator, as a potential witness in his initial disclosures.  (*See generally* Plf. Initial Discl.)  The Secretary also did not disclose any documents arising out of DOL's 2013 investigation of Hoa Salon Roosevelt.  (*See id.*)

On February 12, 2018, Hoa Salon Madison propounded interrogatories and requests for production on the Secretary.  (Martin Decl. ¶¶ 3, 8, Ex. B (attaching a copy of the Secretary's responses).)  Those requests sought information and documents related to DOL's 2013 investigation, including Request for Production ("RFP") No. 22, which requested the Secretary produce "all documents, communications, or other materials that support your assertion that the claimed wage violations were willful," and Interrogatory No. 1, which called for the Secretary to identify "each individual who provided

information or materials that you used when responding to these Interrogatories and [RFPs]." (*See id.*)

The Secretary served its responses and supplemental responses on March 28, 2018, and March 30, 2018, respectively, but those responses do not reference Ms. Chan. (*See generally id*.) Specifically, in response to RFP No. 22, the Secretary stated: "Please see responsive, non-privileged portions of documents marked: DOL 000269-000275[,] DOL 002334-02338." (*Id.* ¶ 8, Ex. B at 3.) Yet, the Secretary later produced a privilege log indicating that all portions of DOL 000269-000275 and DOL 002334-02338 were privileged. (*Id.* ¶ 8, Ex. C at 8-9.) To date, the Secretary has not produced document numbers DOL 000268-000275. (*Id.* ¶ 4.) In addition, the Secretary's response to Interrogatory No. 1 does not reference any DOL employee or investigator involved in the 2013 investigation. (*Id.* ¶ 8, Ex. B at 2 (referencing only Ms. Walum).)

On August 10, 2018, Hoa Salon Roosevelt propounded interrogatories and RFPs to the Secretary. (*See id.* ¶¶ 5, 8, Ex. C.) Defendants again sought information related to DOL's 2013 investigation. (*See id.*) The Secretary failed to produce timely responses and objections and did not request an extension of time or move for a protective order. (*See id.* ¶ 5; *see generally* Dkt.) The parties held a "meet and confer" telephone discovery conference on September 14, 2018, concerning the Secretary's late discovery responses. (Martin Decl. ¶ 6.) At this meeting, the Secretary's counsel agreed to identify the DOL investigators responsible for the 2013 investigation, produce the 2013 DOL investigation file, and provide the discovery responses by September 18, 2018. (*Id.* ¶¶ 6-7.) Despite these representations, the Secretary did not produce these materials until

November 2, 2018—just 11 days prior to the court's dispositive motions deadline and more than two weeks after the October 15, 2018, discovery cut-off. (*See* Mot. at 5; Sched. Order (Dkt. # 17) at 1 (setting the discovery cut-off on October 15, 2018).) Thus, the Secretary did not produce the name of DOL's 2013 investigator, Ms. Chan, or DOL's investigation file until well after the close of the discovery period.

On November 11, 2016, Defendants filed the present motion for partial summary judgment. (*See* Mot.) In their motion, Defendants argue that the Secretary cannot meet his burden of demonstrating that their alleged FLSA violations were willful. (*See generally id.*) Accordingly, Defendants argue that the court should grant partial summary judgment in their favor on that issue and apply the presumptive two-year FLSA statute of limitations instead of the three-year limitations period that applies only in the case of willful FLSA violations. (*See id.*); *see also* 29 U.S.C. § 255(a).

In his response to Defendants' motion, the Secretary does not contest Defendants' description of the course of discovery set forth above. (*See generally* Resp.) Instead, the Secretary contends—without explanation—that the foregoing discovery issues "are irrelevant to the question of whether Defendants' [FLSA] violations . . . were willful." (Resp. at 2 n.1.) The Secretary further declares that he "does not intend to call . . . [Ms.] Chan in the trial . . . and does not need her testimony to prove that Defendants' [FLSA] violations were willful." (*Id.*) Despite the Secretary's contention that Ms. Chan's testimony is not needed, he nevertheless—again without explanation—relies upon her testimony extensively to rebut Defendants' motion for partial summary judgment on the issue of willfulness. (*See* Resp. at 3-6, 11-13 nn. 9-17, 20, 49-52.)

The court now considers Defendants' motion.

## III. ANALYSIS

**A. Summary Judgment Standard**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party may move for summary judgment, identifying each claim . . . or the part of each claim . . . on which summary judgment is sought. *Id.* In summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

Where, as here, "the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c).

**B.    Chan Declaration**

Defendants argue that the Secretary did not timely identify Ms. Chan as a witness in this case or the documents associated with her 2013 investigation of Hoa Salon Roosevelt and, accordingly, the court should strike her declaration and not allow the Secretary to rely upon it in opposing Defendants' motion for summary judgment. (*See* Mot. at 4-6 (detailing the Secretary's late disclosure of Ms. Chan and documents related to the 2013 investigation); *see also* Reply (Dkt. # 41) at 2-5 (asking the court to strike Ms. Chan's declaration).) As noted above, the Secretary relies extensively on Ms. Chan's declaration to support its contention that Defendants' alleged FLSA violations were willful. (*See* Resp at 3-6, 11-13 nn. 9-17, 20, 49-52.)

The FLSA has a two-year statute of limitations for claims of unpaid minimum or overtime wages unless the employer's violation was "willful," in which case the statute of limitations is extended to three years. *See* 29 U.S.C. § 255(a); *Flores v. City of San Gabriel*, 824 F.3d 890, 895 (9th Cir. 2016). Here, the Secretary has alleged from the start

of this litigation that Defendants' FLSA violations were willful. (*See* Compl. ¶ 18.) The Secretary "bears the burden of proof on the issue of willfulness for statute of limitations purposes." *Roces v. Reno Hous. Auth.*, 300 F. Supp. 3d 1172, 1179-80 (D. Nev. 2018), *appeal dismissed*, No. 18-15525, 2018 WL 5754808 (9th Cir. Sept. 25, 2018) (citing *Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 71 (2d Cir. 2014) (citations omitted)).

Federal Rule of Civil Procedure 26 requires a party to disclose the identity of each individual with discoverable information (*i.e.*, each potential witness), along with the subjects of that information, and to provide a copy or a description of all documents that the party may use to support its claims or defenses, unless the party intends to use the witness or documents solely for impeachment. *See* Fed. R. Civ. P. 26(a)(1)(A)(i), (ii). Further, Rule 26(e) obligates parties to supplement in a timely manner their Rule 26(a) initial disclosures and discovery responses. Fed. R. Civ. P. 26(e).

Because both the Secretary's June 22, 2017, complaint and the Secretary's September 26, 2017, amended complaint contain express allegations that Defendants' FLSA violations were "willful" (Compl. ¶ 18; Am. Compl. ¶ 18), the Secretary was aware at the time counsel prepared the Secretary's October 23, 2017, Rule 26 initial disclosures that "willfulness"—an issue on which the Secretary bears the burden of proof[3]—would be an issue at trial. Yet, the Secretary failed to (1) identify Ms. Chan and the subjects on which she had information, and (2) provide a copy or description of

---

[3] *See Roces*, 300 F. Supp. 3d at 1179-80.

ORDER - 13

documents related to Ms. Chan's 2013 investigation of Hoa Salon Roosevelt. (*See generally* Plf. Initial Discl.)  Further, when Defendants later propounded discovery requests to the Secretary that called for this same information, the Secretary failed to timely object or respond. (*See* Martin Decl. ¶¶ 3, 8, Exs. B, C.)  Indeed, as noted above, the Secretary did not disclose Ms. Chan's identity or produce documents related to DOL's 2013 investigation until two-weeks after the discovery cut-off and only 11 days prior to the dispositive motions deadline. (*See* Mot. at 5; *see also* Sched. Order at 1.)

Federal Rule of Civil Procedure 37 "gives teeth" to the Rule 26 disclosure and timely discovery supplementation requirements by forbidding the use "on a motion, at a hearing, or at a trial" of any witness or document that a party failed to properly disclose "unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).  Rule 37 is designed to be self-executing in order to produce a strong incentive to disclose material that the disclosing party would expect to use as evidence whether at trial, at a hearing, or on a motion.  Fed. R. Civ. P. 37, Advisory Comm. Note. (1993).  The party failing to disclose the required information bears the burden of demonstrating that the party's failure was either substantially justified or harmless.  *See Yeti by Molly*, 259 F.3d at 1107.

Here, the Secretary does not dispute Defendants' account of the Secretary's failure to disclose Ms. Chan's identity or the documents related to DOL's 2013 investigation of

//

//

//

Hoa Salon Roosevelt.[4]  (*See generally* Resp.)  Notably, the Secretary makes no effort to demonstrate that his failure to initially disclose Ms. Chan's identity or produce the subject documents, or to timely supplement his discovery responses to include this information, was either "substantially justified" or "harmless."[5]  (*See generally id.*); *see also* Fed. R. Civ. P. 37(c).  The Secretary merely states that he does not intend to call Ms. Chan at trial.  (Resp. at 2 n.1.)  Yet, Rule 37(c)'s sanction is broader than that—it forbids the use of an undisclosed witness not just at trial, but on a motion or at a hearing, too. *See* Fed. R. Civ. P. 37(c)(1).  Indeed, Defendants assert that the Secretary cannot establish that his late disclosure of Ms. Chan's identity was harmless since Defendants only learned of the significance of her testimony with respect to the issue of willfulness when the Secretary produced her declaration to support its opposition to Defendants' motion.  (*See* Reply at 5.)  The court agrees.  Because the Secretary failed to comply with his Rule 26 initial disclosure and discovery supplementation obligations, *see* Fed. R. Civ. P. 26(a)(1)(A), 26(e), and did not demonstrate that his failure to disclose Ms. Chan's identity and the documents related to her investigation in a timely manner was "harmless" or "substantially justified," the court hereby STRIKES Ms. Chan's declaration pursuant to Rule 37(c)(1) and will not consider it with respect to Defendants'

---

[4] Indeed, during the course of oral argument on January 23, 2018, the Secretary's counsel acknowledged that the Secretary did not disclose Ms. Chan's identity until after the discovery cut-off.

[5] During oral argument, the only excuse offered by the Secretary's counsel for the Secretary's late discovery responses was counsel's generally busy schedule.  Based on this representation, the court concludes that the Secretary was not "substantially justified" in failing to initially disclose Ms. Chan or the subject documents or to timely supplement his discovery responses.  *See* Fed. R. Civ. P. 37(c).

motion for partial summary judgment.  *See, e.g.*, *Wallace v. USAA Life Gen. Agency, Inc.*, 862 F. Supp. 2d 1062, 1064-67 (D. Nev. 2012) (excluding insurer's underwriting witnesses where insurer failed to disclose the witnesses until the insurer moved for summary judgment after the close of discovery and failed to provide any legitimate justification for its failure to timely disclose the witnesses).  In addition, the court concludes that the Secretary may not call Ms. Chan as a witness at trial or utilize any other documents related to her 2013 investigation that were produced after the discovery cut-off unless her testimony or those documents are used strictly for purposes of impeachment.[6]  *See* Fed. R. Civ. P. 26(a)(1)(A)(i), (ii).

The court now considers whether Defendants are entitled to partial summary judgment on the issue of willfulness or whether the Secretary has raised a genuine dispute of material fact so that the court may submit the issue to the jury.

**C.      Willfulness**

If an employer's conduct embodies a "willful violation" of the FLSA, section 255(a) of Title 29 permits the extension of the FLSA's standard two-year statute of

//

---

[6] Nowhere in the Secretary's briefing does he contend that he did not initially disclose Ms. Chan because he intended to call her solely for impeachment purposes.  (*See generally* Resp.); *see also* Fed. R. Civ. P. 26(a)(1)(A)(i) (requiring each party to disclose "the name . . . of each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment purposes).  Nevertheless, during oral argument counsel asserted for the first time that the Secretary did not initially disclose Ms. Chan and documents related to DOL's 2013 investigation because the Secretary intended to use this evidence solely for "rebuttal."  Based on this representation, the court will permit the Secretary to utilize Ms. Chan's testimony and the untimely disclosed documents at trial, but will strictly limit the Secretary's use of this witness and the documents at issue for impeachment purposes as stated in Rule 26(a)(1)(A).  *See* Fed. R. Civ. P. 26(a)(1)(A)(i), (ii).

limitations to a three-year period. *Alvarez v. IBP, Inc.*, 339 F.3d 894, 908 (9th Cir. 2003) (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988)); 29 U.S.C. § 255(a). An employer's violation of the FLSA is "willful" if it is "on notice of its FLSA requirements, yet [takes] no affirmative action to assure compliance with them." *Alvarez*, 339 F.3d at 909. Yet, the mere knowledge that the FLSA is "in the picture" is not enough to sustain a finding of willfulness. *Richland Shoe*, 486 U.S. at 132-33. "A violation is willful if the employer 'knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA].'" *Flores*, 824 F.3d at 906 (quoting *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 918 (9th Cir. 2003) (alteration in original)); *McLaughlin*, 486 U.S. at 133. The Ninth Circuit states that the three-year term "may be applied 'where the employer disregard[s] the very "possibility" that it was violating the statute.'" *Flores*, 824 F.3d at 906 (quoting *Alvarez*, 339 F.3d at 909). Nevertheless, "merely negligent" conduct will not suffice, *McLaughlin*, 486 U.S. at 133, and a court will not presume that conduct is willful in the absence of evidence, *Alvarez*, 339 F.3d at 909. Further, "[i]f an employer acts unreasonably, but not recklessly, in determining its legal obligation" under the FLSA, its action is not willful. *McLaughlin*, 486 U.S. at 135 n.13. Although whether an employer has acted willfully is a question of fact, the Secretary must present sufficient evidence of willfulness to survive summary judgment. *See Pignataro v. Port Auth. of N.Y. & N.J.*, 593 F.3d 265, 273 (3d Cir. 2010) (affirming district court's summary judgment finding that employer's violation of the FLSA was not willful).

//

As noted above, the lion's share of the Secretary's evidence concerning willfulness is based on Ms. Chan's declaration and her 2013 investigation of Hoa Salon Roosevelt. (*See* Resp. at 3-6, 11-13 nn. 9-17, 20, 49-52.) Yet, the court has determined that it will not consider Ms. Chan's declaration for purposes of the present motion. *See supra* § III.B. Thus, the only information in the record concerning Ms. Chan's 2013 investigation that the court will consider on summary judgment is contained within Mr. Pravitz's declaration. (*See generally* E. Pravtiz Decl.)

In his declaration, Mr. Pravitz recounts that it was his "impression [that the DOL investigator] was investigating whether Hoa [Salon] Roosevelt was properly compensating its employees for their hours worked." (*Id.* ¶ 4.) He states that he and Ms. Pravitz "cooperated to [their] fullest extent with the investigator" and "provided the employee schedules and payroll records for a specific period of time." (*Id.* ¶¶ 3-4.) He recalls that the investigator told them "that the investigation had not revealed any wage violations." (*Id.* ¶ 5.) Indeed, absent Ms. Chan's declaration, there is no documentation or other evidence in the record of Defendants receiving any notice that they were in violation of any FLSA provision during or after the 2013 investigation. (*See generally* Dkt.) Nevertheless, Mr. Pravtiz acknowledges that the DOL investigator suggested "one change . . . going forward." (E. Pravtiz Decl. ¶ 5.) Specifically, Mr. Pravitz recalls that the investigator suggested that Hoa Salon Roosevelt "change its internal payroll records from classifying all employees as 'salaried,' and instead classify those employees who

were paid by the hour and for overtime as 'hourly.'"[7]  (*Id.*)  When Mr. Pravitz and Ms. Pravitz learned that they were again the subjects of a DOL investigation in October 2016, they "were confident that [they] would again be found in compliance [because], with the exception of the . . . classification change, [they] had been following the same employee scheduling and payroll practices that [they] had in place at the time of the July 2013 investigation."  (E. Pravitz Decl. ¶ 6.)  Thus, Defendants argue that the facts surrounding the 2013 investigation actually undercuts the notion that their later alleged violations were willful.

Despite Defendants' characterization of the import of the 2013 investigation, the Ninth Circuit has found that prior FLSA violations are "probative" on the issue of willfulness even if the prior violations are different in kind from the presently alleged violations and the prior violations were not willful.  *See Chao*, 346 F.3d at 919.  Unlike the circumstances in *Chao*, however, the 2013 investigation of Defendants did not result in any violations and in fact led Defendants to believe that their payroll system complied with the FLSA.  (*See* E. Pravitz Decl. ¶¶ 5-6.)  Nevertheless, the Secretary asserts that "Defendants' [sic] misapprehend[ed] the lessons that the 2013 audit should have taught them."  (Resp. at 13.)  The Secretary argues that "[i]nstead of being a stamp of approval," the 2013 investigation should have "put Defendants on notice of the deficiencies of their

//

//

---

[7] As noted above, Defendants made this suggested change in April 2015, at both the Hoa Roosevelt Salon and the Hoa Ballard Salon.  (*Id.*; *see also* Roosevelt Disc. Resp. at 3; Ballard Disc. Resp. at 3.)

payroll practices and should have resulted in changes to ensure compliance in a timely manner." (*Id.*)

The court agrees with the Secretary insofar as the fact of the 2013 investigation is evidence that the Secretary may rely upon to prove willfulness.[8]  The fact that Defendants were involved in a prior FLSA investigation alone is not proof of willfulness, but it is probative of Defendants' notice of the FLSA and its requirements.  Indeed, in *Chao*, the Ninth Circuit was not merely concerned with the defendant's prior FLSA violation, but explained that "[t]he fact that [the employer] previously had run-ins with [DOL] certainly put [the employer] on notice of other potential FLSA requirements."  346 F.3d at 919.  Similarly, in *Hodgson v. Cactus Craft of Arizona*, the Ninth Circuit affirmed the district court's finding that the employer's FLSA violations were willful in part due to the fact that DOL had previously investigated the employer's labor practices.  481 F.2d 464, 467 (9th Cir. 1973).  Viewing the evidence in the light most favorable to the Secretary, the existence of the 2013 investigation weighs against granting Defendants' motion for partial summary judgment on the issue of willfulness.

In addition to the 2013 investigation, as evidence to support the willful nature of Defendants' FLSA violations, the Secretary also points to (1) Mr. Pravitz's and Ms. Pravitz's college level studies in business or business administration, (2) Mr. Pravitz's extensive prior experiences in both business and government, and (3) Mr. Pravitz's and

//

---

[8] The Secretary may rely on the 2013 investigation so long as he does not seek to introduce such evidence through Ms. Chan's testimony or through documents related to the investigation that were not timely disclosed.  *See supra* § III.B.

Ms. Pravitz's stated efforts to improve or "normalize" the employee payment practices they had observed at other nail salons. (*See* Resp. at 10; *see also* E. Pravitz Dep. at 8:7-9:24, 10:16-24, 17:11-20; Daquiz Decl. ¶ 4, Ex. 3 ("M. Pravitz Dep.") at 17:11-16.) In other words, the Secretary argues that Mr. Pravitz's and Ms. Pravitz's knowledge and sophistication as employers is evidence of willfulness. Although not dispositive alone, many courts have relied in part on the sophistication of the defendants when considering the element of willfulness. *See, e.g.*, *Kim v. Kum Gang, Inc.*, No. 12 CIV. 6344 MHD, 2015 WL 2222438, at *28 (S.D.N.Y. Mar. 19, 2015) (noting among other factors that defendants "ran a large and sophisticated business for many years," and "they themselves professed to be aware of the legal requirements governing minimum wage and overtime"); *Jensen v. Univ. Props., Inc.*, No. 2:05-CV-172 TC, 2007 WL 541812, at *4 (D. Utah Jan. 24, 2007) (noting among other factors that the defendant was a "sophisticated and knowledgeable businessman"); *Goudie v. Cable Commc'ns, Inc.*, No. 08-CV-507-AC, 2008 WL 4628394, at *9 (D. Or. Oct. 14, 2008) (noting among other factors that the defendant is "a sophisticated commercial entity"); *Chao v. Barbeque Ventures, LLC*, 547 F.3d 938, 942 (8th Cir. 2008) (noting among other factors "the sophistication of [the defendant's] senior management"). Accordingly, the court finds that this evidence also weighs against granting Defendants' motion.

Finally, during DOL's 2016 investigation of Hoa Salon Roosevelt and Hoa Salon Madison, Defendants "were not able to produce any of the time records showing when employees started their shifts and ended their sheets [sic] because they did not maintain them." (Walum Decl. ¶ 4.) Courts have found willfulness based in part on a defendant's

failure to maintain proper records of employees' hours. *See, e.g.*, *Thornton v. Crazy Horse, Inc.*, No. 3:06-CV-00251-TMB, 2012 WL 2175753, at *11 (D. Alaska June 14, 2012) ("Record keeping was atrocious, management never seemed to make any sincere effort to determine when dancers were coming and going or working or not working."); *Xuan v. Joo Yeon Corp.*, No. 1:12-CV-00032, 2015 WL 8483300, at *5 (D. N. Mar. I. Dec. 9, 2015) (holding that, despite employer's belief he was following the law, his failure to track his employee's hours demonstrated a reckless disregard for the possibility that he might not be in compliance with the FLSA)*; Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 844 (6th Cir. 2002) ("an employer's recordkeeping practices may nonetheless corroborate . . . claims that the employer acted willfully in failing to compensate for overtime"); *Majchrzak v. Chrysler Credit Corp.*, 537 F. Supp. 33, 36 (E.D. Mich. 1981) (finding a willful violation of overtime provisions where the company's policy of not recording "compensation time" earned for working in excess of 40 hours per week was "susceptible to abuse and indeed was abused herein"). Thus, this evidence also cuts against granting summary judgment to Defendants on the issue of willfulness.

In sum, in the absence of Ms. Chan's testimony, the Secretary relies upon the foregoing hodge-podge of evidence to raise a triable issue on the element of willfulness. Construing this evidence in the light most favorable to the Secretary as the court must when considering summary judgment, the court concludes that the Secretary's evidence is sufficient to raise a genuine dispute of material fact concerning the issue of willfulness. *See* Fed. R. Civ. P. 56. As a result, the court DENIES Defendants' motion for partial

summary judgment and reserves the issue of willfulness—as it pertains to the statute of limitations found in 29 U.S.C. § 255(a)—for the jury to decide.

## IV. CONCLUSION

Based on the foregoing analysis, the court (1) STRIKES the declaration of Ms. Chan and does not consider it for purposes of this motion, and (2) DENIES Defendants' motion for partial summary judgment (Dkt. # 30).

Dated this 25th day of January, 2019.

_____
JAMES L. ROBART
United States District Judge